UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:22-cr-00020-KJM |
| Plaintiff, | ORDER |
| v. | |
| John L. Alimenti, | |
| Defendant. | |

Defendant John L. Alimenti appeals his misdemeanor conviction for child endangerment, challenging the sufficiency of the evidence supporting his conviction. The matter is fully briefed, and the court heard oral argument at a hearing on May 9, 2022. Certified law student Alexander Atkinson appeared for Mr. Alimenti under the supervision of Assistant Federal Defender Carolyn Wiggin; Assistant United States Attorney Alstyn Bennett appeared for the United States. Having considered the parties' positions, relevant legal authority, and the record in this case, the court **affirms** Mr. Alimenti's conviction. Viewing the evidence in the light most favorable to the government as required, a rational trier of fact could find Mr. Alimenti guilty of child endangerment beyond a reasonable doubt.

I.   **BACKGROUND**

In December 2019, Mr. Alimenti went bowling with three minors—his two sons, ages four and thirteen, and their friend, age thirteen. *See* Tr. 139:10–15, ECF No. 57. When Mr.

1  Alimenti picked up his sons, his thirteen-year-old son, A.A., found two miniature bottles of liquor
2  and a can of beer in the center console: one empty, one full, and one half full.  Tr. 140:19–23,
3  149:8–13.  While they all were at the bowling alley, Mr. Alimenti made multiple trips to his truck.
4  Tr. 141:20–22, 147:8–12, 156:22–23.  The evidence presented at trial suggested he was drinking.
5  *See* Tr. 246:14–19.  At one point, the son's friend, J.C., saw Mr. Alimenti drinking a brown liquid
6  in a clear plastic cup, and he said Mr. Alimenti smelled like alcohol.  Tr. 158:9–10, 159:3–10.
7  A.A. smelled it too.  Tr. 143:16–23, 82:17–19.
8       It was dark by the time the group left the bowling alley, got in Mr. Alimenti's truck, and
9  headed home on a "roller coaster"-like road.  Tr. 142:16–20; Tr. 18:23–19:6.  During the drive
10 home, A.A. noticed his dad swerving while driving.  Tr. 150:12–16.  Beale Air Force Base's
11 Chief of Security Forces, Lieutenant Colonel Ryan Barton, also noticed Mr. Alimenti's swerving,
12 characterizing it as frequent--"more often than not"--and "significant."  Tr. 23:1–9, 24:2–6,
13 26:6–9.  Specifically, Colonel Barton observed Mr. Alimenti's truck going "three-quarters of the
14 way over the white line on the shoulder," coming back into the lane, and then drifting off into the
15 shoulder again.  Tr. 23:1–9.  At times, Colonel Barton also observed the truck drifting across the
16 center "yellow lines" and into the other side of the road for "oncoming traffic."  Tr. 10–12.  This
17 went on for three and a half miles at speeds as high as fifty-five miles per hour.  Tr. 24:7–15,
18 26:6–9.  Eventually,  Colonel Barton called dispatch and requested a welfare check, noting
19 "something seems to be wrong."  Tr. 24:16–22.
20       Senior Airman Jessica Jasso was dispatched to conduct the welfare check.  Tr. 48:15–17.
21 Airman Jasso tailed Mr. Alimenti for roughly a minute before activating her patrol lights.  Tr.
22 48:24–25, 49:1–4.  In the brief time she followed, Airman Jasso noticed the truck's swerving.  Tr.
23 49:5–9; Tr. 79:5–7, 19–21.  When she activated her patrol lights, Mr. Alimenti braked hard.  Tr.
24 49:10–19.  Mr. Alimenti then turned on his right-turn signal, proceeded to turn left, and then
25 pulled over.  Tr. 81:22–24.  Airman Jasso approached the driver's side window and observed that
26 Mr. Alimenti had "very glossy eyes" and a "heavy scent" of alcohol.  Tr. 50:13–14.  She
27 eventually asked him to leave his truck to perform field sobriety tests.  Tr. 143:13–15.  When Mr.
28 Alimenti got out of the car, A.A. checked the center console and found a bottle he had seen earlier

2

that day, which was full at the time, was now empty. Tr. 144:2–8. A.A. told J.C. that his father had been drinking "because [the bottles] were fuller than they are now." Tr. 144:9–11, 161:5–13.

Airman Jasso then had Mr. Alimenti perform two field sobriety tests: the walk and turn test and the one-legged stand. Tr. 53:10–58:4. Mr. Alimenti exhibited three out of eight signs of impairment on the walk and turn test. Tr. 56:4–11. He showed zero signs of impairment on the one-legged stand test. Tr. 57:21–23. Airman Jasso concluded Mr. Alimenti was "not in any condition to operate a vehicle." Tr. 58:11–14. Still, she offered to conduct a breathalyzer test, but Mr. Alimenti declined, worried about getting a positive result in front of his sons. Tr. 58:25–59:6, 222:7–8. Tech Sergeant Ji Song, who arrived during the stop to provide backup, then arrested and transported Mr. Alimenti to a squadron detention cell. Tr. 109:10–14, 109:25–110:1. On the five-minute ride to the detention cell, Sergeant Song could smell alcohol coming from the back seat of the patrol car. Tr. 109:19–23.

A post-arrest search of Mr. Alimenti's truck revealed sixteen containers of alcohol: fourteen miniature bottles of liquor and two tall cans of beer. *See* Tr. 61:18-22; Photograph, R. Excerpt at 5, ECF No. 61-1. Thirteen of the containers were open. Tr. 61:21–25, 63:25–64:21, 91:17–18. Of those thirteen, some were empty, and some were half full. Tr. 61:21–25, 63:25–64:21, 91:17–18.

The government charged Mr. Alimenti with four offenses: (1) child endangerment in violation of 18 U.S.C. § 13 and California Penal Code § 273a(b); (2) reckless driving in violation of 18 U.S.C. § 13 and California Vehicle Code § 23103(a); (3) possession of an open container in a vehicle in violation of 18 U.S.C. § 13 and California Vehicle Code § 23223(a); and (4) storage of an opened container in the passenger compartment of a vehicle in violation of 18 U.S.C. § 13 and California Vehicle Code § 23226(a). *See generally* Information, ECF No. 1. Mr. Alimenti pled not guilty to all four counts. *See* Mins., ECF No. 3.

Magistrate Judge Carolyn K. Delaney held a two-day bench trial in December 2021. *See* Mins., ECF Nos. 41 & 43. Judge Delaney convicted Mr. Alimenti on counts one (child endangerment), three (open containers in a vehicle), and four (storage of an open container in a passenger compartment). *See* Mins., ECF No. 52. Judge Delaney acquitted Mr. Alimenti on

3

count two (reckless driving). *Id.* Judge Delaney sentenced Mr. Alimenti to sixty days' imprisonment and imposed a total fine of $1,270.00. *See id.* Mr. Alimenti timely appealed his child endangerment conviction on sufficiency of the evidence grounds. *See* Appeal, ECF No. 54; Appellant's Br., ECF No. 61. This court has jurisdiction to resolve the appeal under 18 U.S.C. § 3402 and Federal Rule of Criminal Procedure 58(g)(2)(B).

## II.  LEGAL STANDARD

In an appeal of a criminal conviction handed down by a magistrate judge, "the scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The court reviews a challenge based on sufficiency of the evidence in a bench trial, as here, de novo. *United States v. JDT*, 762 F.3d 984, 1000 (9th Cir. 2014). Under this standard, "a conviction must be affirmed if 'after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Untied States v. Maggi*, 598 F.3d 1073, 1080 (9th Cir. 2010)). The court resolves any conflicts in the evidence in support of the verdict. *See United States v. Hernandez-Quintania*, 874 F.3d 1123, 1126 (9th Cir. 2017).

## III.  ANALYSIS

Mr. Alimenti challenges his conviction on two related grounds. First, he argues the evidence was insufficient to convict him of child endangerment. *See* Appellant's Br. at 21–31. Second, he argues his acquittal on the reckless driving count necessarily demonstrates that the evidence was not sufficient to prove the mens rea required for a child endangerment conviction. *See id.* at 31–34. The court addresses each argument in turn.

### A.  Sufficiency of the Evidence

To convict a defendant of child endangerment, the government must prove two elements. *See* Cal. Penal Code § 273a(b). First, the government must prove that Mr. Alimenti, while having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered. *See id.* This element is not disputed; Mr. Alimenti drove the minors "willfully" as defined by law. *See People v. Valdez*, 27 Cal. 4th 778, 787–88

1  (2002) ("Willfully" in this context "implies simply a purpose or willingness to commit the act
2  . . . . It does not require any intent to violate the law, or to injure another . . . ." (citation
3  omitted)).  Second, the government must prove Mr. Alimenti was criminally negligent when he
4  caused or permitted the child to be endangered.  *See* Cal. Penal Code § 273a(b).  A defendant is
5  criminally negligent when the conduct is "such a departure from what would be the conduct of an
6  ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a
7  proper regard for human life . . . or an indifference to consequences."  *Valdez*, 27 Cal. 4th at 788
8  (quoting *People v. Penny*, 44 Cal. 2d 861, 879 (1955)).

9       Viewing the evidence in the light most favorable to the government, a rational trier of fact
10 could find that Mr. Alimenti was criminally negligent.  Mr. Alimenti was drinking alcohol before
11 driving three minors home at night and on a "roller coaster"-like road.  *See* Tr. 246:14–19; Tr.
12 18:23–19:6.  A.A. and J.C. smelled the alcohol on Mr. Alimenti's breath, and two officers did
13 too.  Tr. 158:9–10, 159:3–10, 143:16–23, 82:17–19, 50:13–14, 109:19–23.  Mr. Alimenti
14 nevertheless began driving the minors home, frequently and "significantly" swerving in and out
15 of his lane for three and a half miles at speeds as high as fifty-five miles per hour.  Tr. 23:1–9,
16 24:2–6, 26:6–9.  This manner of driving departed greatly from the conduct of an ordinarily
17 prudent person in Mr. Alimenti's position, and his decision to drive the minors home
18 demonstrated an indifference to the consequences of his actions.  *See Valdez*, 27 Cal. 4th at 788.

19      Mr. Alimenti's arguments to the contrary mostly sidestep Judge Delaney's credibility
20 determinations or ignore the court's deferential review of the facts on appeal.  For example,
21 Mr. Alimenti argues the evidence is insufficient to prove he was intoxicated to a degree that
22 affected his performance behind the wheel.  *See* Appellant's Br. at 25.  Judge Delaney found the
23 "testimony shows overwhelmingly" that Mr. Alimenti was "clearly impaired in his driving," Tr.
24 246:2–9, specifically crediting the testimony of Airman Jasso, who determined that Mr. Alimenti
25 was "not in any condition to operate a vehicle," Tr. 58:11–14.  Mr. Alimenti's arguments do not
26 negate the government's showing: there is sufficient evidence to allow a rational trier of fact to
27 find the essential elements of child endangerment beyond a reasonable doubt.  *See Hernandez-*
28 *Quintania*, 874 F.3d at 1126 ("Conflicting evidence is to be resolved in favor of the verdict.").

### B. Mens Rea Challenge

Judge Delaney found Mr. Alimenti not guilty of reckless driving under California Vehicle Code section 23103(a) but guilty of misdemeanor child endangerment under California Penal Code section 273a(b). *See* Mins., ECF No. 52. Mr. Alimenti argues his acquittal on the reckless driving count shows the evidence was not sufficient to prove the mens rea required for a child endangerment conviction. *See generally* Appellant's Br. at 31–34. The court disagrees.

A person is guilty of reckless driving if he "drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property . . . ." Cal. Veh. Code § 23103(a). This includes a subjective awareness of risk that the defendant disregards: A defendant acts with "wanton disregard" for safety "when, one, he or she is aware that his or her actions present a substantial and unjustifiable risk of harm; and two, he or she intentionally ignores that risk." *People v. Barber*, 55 Cal. App. 5th 787, 808 (2020) (quoting and explicitly approving California's reckless driving jury instruction as "accurately stat[ing] the elements of reckless driving"). Judge Delaney found it was the subjective element of this test that defeated the government's reckless driving case against Mr. Alimenti. *See* Tr. 248:7–10 ("As to Count 2, . . . reckless driving, the Government has failed to meet its burden of proof as to the wanton disregard needed to uphold this count.").

Child endangerment, on the other hand, does not require a showing of subjective awareness of risk. *See Valdez*, 27 Cal. 4th at 790 (noting child endangerment statute does not require subjective awareness of risk; rejecting argument to contrary as "a radical and novel departure from existing law"). Rather, a child endangerment charge requires only criminal negligence, and this inquiry "turns . . . on the objective reasonableness of [defendant's] course of conduct." *Id.* at 785. In other words, criminal negligence "is a standard for determining when an act may be punished under the penal law because it is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances." *Id.* at 789–90. Because child endangerment does not require the subjective showing that doomed the government's reckless driving charge, it was not inconsistent for Judge Delaney to find Mr. Alimenti guilty of child endangerment but not reckless driving.

1 **IV.  CONCLUSION**

2     Mr. Alimenti's child endangerment conviction is **affirmed**.

3     This order resolves ECF No. 54.

4     IT IS SO ORDERED.

5 DATED:  May 25, 2022.

CHIEF UNITED STATES DISTRICT JUDGE